PROVO STY, J.
The railroad of the defendant company skirts the eastern side of the town of Eunice, running due north and south, along what on the map is East street. Though it has a regular station, its principal stopping place, where most of the passengers get on and off the trains, and where the busses come to meet them, is at Laurel street crossing. Plaintiff went there, just before the arrival of the morning train, to meet a friend expected by the train. The day was warm, and, there being no depot or other shelter provided there by the railroad, the persons who, like plaintiff, had come to await the arrival of the train, of whom there was quite an assemblage, some 40, it is said, sought protection against the hot sun, that was pouring down, wherever they could find it. A line of freight cars, with no locomotive attached, stood there upon the side track, alongside of the main track; the rear end of the hindmost car being on a line, or about on a line, with the property line of Laurel street, or, perhaps, impinging a few feet upon what would have been the sidewalk, if there had been one. To get out of' the sun, plaintiff went under this end car,, and took a seat upon the rail, just back of' the front truck of the car, close enough to' the wheel for him to have leaned against it. Two young men accompanied him. One of them took a seat on the end of a cross-tie on the shady side of the car, out of danger from any movement of the cars. The other stretched himself on the grass. So placed and grouped, they were engaged in conversation when a freight train, composed of a locomotive and six ears, that had backed, upon the side track, or switch, struck the line of cars, in coupling to them, and caused *651 them to move, so that the wheel near which plaintiff was sitting caught his leg and pinched and crushed it so badly, without, however, passing entirely over it, that it had to be amputated near the thigh.
Plaintiff sues in damages, charging negligence on the part of the defendant company, in that no whistle or bell was sounded to give warning of the approach of the locomotive, and in that there was no flagman or other person at the crossing, or at the end of the train, to give notice or warning of the intended back movement of the line of freight cars, and in that the backing train was brought with great and unnecessary force against the stationary cars.
[1] The first feature that strikes the judicial mind in approaching the consideration of the case is the reckless and needless imprudence of plaintiff in placing himself under this car, on the rail, close to the wheel, when he knew that a locomotive might come and move the cars at any moment, and when he might have had a seat just as shady and comfortable, and as' convenient for carrying on his conversation, by following the example of his companion and sitting on the end of one of the cross-ties. His learned counsel make the attempt to absolve him of negligence by likening his sitting on this rail in front of this car wheel to the act of one who seeks shelter from the sun under a horseless wagon. The argument is hardly to be taken seriously.
[2] The main reliance of counsel is upon .the so-called last clear chance doctrine. That doctrine is formulated in 29 Cyc. 530, as follows:
“While the negligent act or omission of the person injured ordinarily defeats recovery, the rule is subject to the exception or qualification that, although such person has been guilty of negligence in exposing himself to danger, yet he may recover, if defendant, after knowing of such danger, could have avoided the injury by the exercise of ordinary care, and fails to do so, as in such case the negligence of the person injured is not the proximate cause of the injury, and the negligence of defendant becomes the proximate cause. This rule has no application where the negligence of the person injured and of defendant are concurrent, each of which, at the very time when the accident occurs, contributes to it.”
[3] In the present case the negligence of defendant in sitting in this place of danger continued down to the moment of the accident. Plaintiff was under no disability whatever. If he continued to sit on this rail, in this perilous place, it was simply because he chose to do so.
Anent the practical operation of this doctrine of last clear chance, we quote further from Cyc., loe. cit., the following:
“The rule has no application where the negligence of the person injured and of defendant are concurrent, each of which, at the very time when the accident occurs, contributes to it.”
[4] We do not think that exercise of due care on the part of a railroad company requires it to look under its stationary cars, before moving them, to ascertain whether somebody is not sitting on one of the rails.
The learned counsel argue the case as if some one at the crossing, or some one using the crossing, or the space round about it, in the legitimate, ordinary way, had been injured. Rut plaintiff was not at the crossing. He was close to the front truck of the car, and the car was 36 feet long; and he was using neither the crossing nor the space about it in the legitimate, ordinary way. He was in a position where a lookout on the cars could not possibly have discovered him. And, we repeat, it is not the duty of a railroad' company, before attempting to move a stationary car on a side track, to look under the car, to ascertain whether somebody may not be under it.
We find that, as a matter of fact, the coupling was made with unusual care, owing to the very fact that the end of the stationary car was close to, or upon, the crossing.
The brakeman who adjusted the coupling had gone to parts unknown by the time of *653 the trial, and therefore did not testify in the. ease. Whether he took the precaution to glance ahead to see that the crossing was clear, before signaling the train to come on for the coupling, the evidence does not show. But it does show that the line of stationary cars moved so little that no one standing on the crossing could have been run over.
[5] The railroad was under no obligation to keep a stationary flagman at this crossing.
We find that the whistle was blown; that it was blown when the train was backing on the Y, about 1,800 feet from where plaintiff was seated on the rail. Whether the bell was rung, or not, is left doubtful. The fireman says that he rang it continuously up to the time the engine stopped; and he is corroborated in that statement by the conductor. The brakeman testified that he was standing on the top of the car next to the engine; that the bell was being rung as the traiD was backing down the switch to make the coupling; but that he does not remember where it stopped ringing. The engineer says that the bell was being rung while the train was backing down the Y; but that he does not remember whether it continued to ring after they had entered the siding, as, on leaving the Y, he “began to get busy taking signals.” A witness who had stood holding his horse and a calf in the ditch alongside of the track, between the Y and the entrance of the siding, testified that the whistle was blown and the bell rung, and that the train was then backing, but whether on the Y or on the siding he could not tell, because the sounds frightened his horse, and from that moment his whole attention was centered on holding the animal.
None of the other witnesses heard either whistle or bell. This is not strange as to those who were at some distance, or at work inside of the neighboring buildings; but it is strange as to one man who was sitting outside on the steps of a building facing the track at the crossing, and as to plaintiff and 'the two young men who were with him, one lying on the grass and the other sitting on the end of a cross-tie.
[6] The number of stationary ears on the siding is variously estimated from 8 to 20, and the locomotive was at the far end of the 6 which it was backing. This would place the locomotive at a considerable distance from the witnesses that did not hear the bell. Be that as it may, we do not find it established that the bell was not rung as long as the backing train was in motion.
[7] We fail to find, therefore, that the railroad was in any respect negligent. So that plaintiff would have to fail in his suit, even apart from his own negligence.
The judgment appealed from is set aside, and the suit is dismissed, at plaintiff’s cost.