BREAUX, O. J.
Plaintiff sued defendant for a judgment in the sum of $10,000 for the use and benefit of his son, Anthony Noto, aged 13 years.
About the hour of 6 o’clock p. m., on the 21st day of April, 1909, a train of defendant corporation was in place at or near Cypress street in the city of New Orleans, corner of Clara street.
This train was made up of about a dozen cars.
The contention is, on the part of plaintiff, that his son properly believed that the train under which he fell was not to be moved without warning, as it had been at a standstill for many hours.
That his son, while in search of a small 1 rubber ball, came in contact with one of *445 the cars of the train; that it suddenly and negligently pulled out, and crushed his foot, and crippled him for life.
He suffered pain and agony; was in the hospital for weeks. Two surgical operations were performed.
The defendant denies all negligence on its part, and avers that the hoy brought on himself, by his own fault, the pain and suffering he has endured; that he, the son, was actually committing a trespass at the time he was wounded, and that it, defendant, had not blocked Clara street, as alleged by plaintiff ; that the car was not in the street when the accident happened, but that its employés were switching cars on its property, in its own yards; and that, without any knowledge of its employés, the boy ran under tbe car to get a rubber ball, and it was at that moment that his foot came in contact with the wheel of one of defendant’s cars.
There is considerable difference in the statement of witnesses.
Nearly all of plaintiff’s witnesses testified that Anthony was in the act of stooping on the sidewalk on Clara street while passing the break or opening on the street between two of defendant’s cars, and that it was while in the act of stooping that he was struck by the car; that he was thrown between the rails under the car; that his great toe of the right foot was caught by the wheel of the car and crushed.
This statement of plaintiff’s witnesses is entirely different from that of defendant’s witnesses.
Defendant’s witnesses were its own employés, except two. These two had since left defendant’s employ, and were in the service of other corporations.
All of defendant’s witnesses, including the two before referred to, agree in testifying that the boy was not in the public streets, but in the yard of the railroad company; that they saw him emerge from under the-car in the yard of the railroad company, about tbe length of a car and a half from the corner of Clara street; - that near the place at which he emerged on the side of the ear there was a small rubber hall, the same for which the boy who was hurt was reaching when he fell and met with the accident.
A Mr. Luke, who was a switchman of the defendant company, one of the two witnesses before mentioned, who, whén he testified, was in the employ of the New Orleans Terminal Company, said, as a witness, that he was working at the hind end of this freight train, doing (to use his expression) the field work — that is, work identified by railroad people by that word; that he alighted at Clara street to couple the cars; that a coupling had already been made at Willow street; that immediately after he had alighted he saw the man who made the coupling at Willow street running, and he heard a boy crying; that he ran to the place, and saw the boy coming out from underneath the car.
This witness testified that, in addition to his work of coupling cars at Clara street, it was also his work to protect the crossing and warn passers-by of approaching danger, and that if any one had attempted to pass between the cars on Clara street, where the witnesses of plaintiff say the boy attempted to cross, he would have seen him. There was nothing to prevent his seeing him. It was his duty.
To quote from his testimony:
“A. Well, I would have seen anybody who came along Clara street at that time, because there was nothing in the world to prevent me from seeing them. I could look up Clara street either way. All of the crossings were open, and I was there on the right-hand side of the car, which would be on the Basin side, on the river side, over this way, and, of course, I could have seen anybody who might have attempted to cross while I was there.”
He added that, if the boy had gone under the car from the sidewalk on Clara street, *447 he would have seen him, for he was at the very place, and if the boy had been going along Clara street on the sidewalk, and had been knocked down by the car, he certainly would have seen him.
We will not insert a statement of the other witnesses on this point. It is sufficient to state that they fully corroborate this testimony as to the place of the accident.
Plaintiff’s son — Anthony—testified, and, in some respects, corroborated defendant’s witnesses ; for, as a witness, he said that his father sent him to the New Basin to see if a certain schooner was in; that he went across the car-blocked street; that the banquette was open only on the lake side of Clara street; that there were two boys playing ball, and the ball ran underneath the car; that they asked him, as he was passing, to kindly get the ball and throw it back to them; that his answer was “All right,” and he stepped a small distance and stooped down for the ball; that it was just then that he was struck down by the car and his foot crushed; that he attempted to run to the foreman or the switchman, but fell about 30 feet from the banquette.
He was taken to the Charity Hospital by his father, as before mentioned.
Something was said by the witnesses about the slack. We will add here that, in coupling a long string of cars, the slack almost entirely runs out by the time that it runs to the end. The end cars run a very much shorter distance than the car next the engine.
We will also add here that the engine was near Claiborne street, and was pushing the cars toward Magnolia street, coupling them as they were pushed to the hind car.
That accounts for the truthfulness of the little boy’s statement as a witness that the wheel which ran over his toe only moved about an inch. It was the wheel of one of the hind cars, and, in consequence, the impact of the coupled train with the last car was inconsiderable.
The weight of the testimony is that there was a switchman at the crossing; he did not have a red flag; the streets were not obstructed as alleged; the bell gave the usual sound when coupling cars; the boys were notified not to play ball in any of the company’s yards, as it was dangerous.
Mr. Maddix, terminal agent of defendant company, testified that he was well acquainted with the boy’s father; that he said to this witness, whom he met about 20 minutes after the accident, that the boys were playing ball; that his boy was “running for the ball and went underneath the car.”
This has been denied.
These are the main features of the case as relates to facts.
The case was tried before a jury. They unanimously rejected the demand.
In reviewing the testimony, .we were not convinced by plaintiffs witnesses that the boy was knocked down by the car and fell under the car between the rails. We did not find it possible to arrive at the conclusion that it was in that asserted way that his toe was mashed. According to the weight of the testimony, he was wounded by the car wheel under which he went to get the ball.
' His right foot was on the rail. “The wheel turned just enough to catch his toe,” copying from the testimony.
On another point, we are equally as well convinced that no damages should be allowed.
The boys were playing in defendant’s yard; or, if we take it that the boy who was hurt was not playing, as testified to by some of the witnesses, while it was kind of him, and that which might be expected of a goodnatured boy to comply with the request of the boys who were playing, it would not justify us in allowing damages, as the plea of negligence urged by plaintiff against de *449 fendant is not sustained by the testimony.
We do not attach controlling importance to the mere fact that plaintiff’s son was on -defendant’s ground, within its railroad yards, if defendant had been negligent; for “humane humanity” will not sanction negligence which results in the wanton sacrifice of life.
Here there was no act of negligence which renders defendant liable.
It is argued, in brief and at bar, by learns ed counsel for plaintiff, that defendant should have given warning before beginning to couple its cars.
That would involve the necessity of giving other and further warning than that usually given.
Even a boy, entitled to every reasonable protection, cannot be compensated for injury on the ground that he was entitled to further warning in a case in which he exposes himself as he did on defendant’s premises.
His father and legal representative failed to inform us in what respect there was not sufficient warning.
Boys evidently should not run under cars in the railroad yard.
A similar point was decided in the Hammers v. Colorado Southern Case, 128 La. 648, 55 South. 4.
Now, as relates to a red flag and the flagman:
To sustain the proposition that in parking cars it is the duty of a railroad company to have a flagman with a red flag at the point where the tracks cross the street, a “lookout and a watchman” on the end of the car attached to the end of the engine, to give warning of the intended motion in backing the cars, plaintiff cites Curley v. Railway Co.. 40 La. Ann. 810, 6 South. 103, and a city ordinance.
In this cited case, there was no one at the crossing. The bell did not ring, and in several other respects the features of the case are entirely different from those of the case now before us for decision.
The jury heard the witnesses, and arrived at the conclusion that the weight of the testimony is with the defendant.
We have not found wherein they have erred.
The judgment is affirmed.