**SOUTHERN RAILWAY COMPANY, a corporation, Appellant,**

v.

**Frank J. MADDEN, Appellee.**

No. 7196.

United States Court of Appeals
Fourth Circuit.

Argued June 12, 1956.
Decided Aug. 4, 1956.

See also 4 Cir., 224 F.2d 320.

# 200

George H. Ward, Asheville, N. C. (John Gregg McMaster, Columbia, S. C., and Harold K. Bennett, Asheville, N. C., on the brief), for appellant.

John L. Nettles, Darlington, S. C. (James P. Mozingo, III, Darlington, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BARKSDALE, District Judge.

PARKER, Chief Judge.

This is an appeal by a railroad company from a judgment for damages in a personal injury action instituted by a plaintiff who claims to have been injured at the 16th Street crossing of defendant's railroad yard in the City of Charlotte, North Carolina, by cars which he claims were negligently backed without signal or warning. The railroad denies the negligence alleged and contends that plaintiff's injuries resulted from his having crawled, while drunk, under cars standing above the crossing which were moved without reason on the part of its employees to apprehend that plaintiff was in a position of peril. Plaintiff sustained serious injuries, his left leg being cut off between knee and ankle and the heel of his right foot being severed.

The case was twice tried. On the first trial the jury found a general verdict in favor of plaintiff in the sum of $5,000. The trial judge allowed this verdict to stand in so far as it established liability on the part of defendant but set it aside in so far as it fixed the amount of damages, awarding a new trial on the issue of damages alone. On the new trial so awarded the jury found damages in the sum of $75,000; and from judgment for that amount the railroad company has appealed. Five questions are presented by the appeal: (1) whether there was an abuse of discretion in not transferring the case to Charlotte, North Carolina, for trial; (2) whether the evidence was sufficient to take the case to the jury on the question of liability; (3) whether there was prejudicial error in admitting in evidence letters of the railroad's claim agent written in connection with attempted compromise of the case; (4) whether there was prejudicial error in the charge of the judge to the jury on the first trial; and (5) whether the judge was acting within the proper limits of a sound discretion in setting aside the verdict as to the amount of damages and awarding a new trial on the issue of damages alone.

On the question of transfer, it appeared not only that the plaintiff's injury occurred in Charlotte, North Carolina, and that the question of liability was governed by North Carolina law, but also that all of the witnesses to the occurrence and to the treatment of plaintiff in a Charlotte hospital following his injury lived in Charlotte, except one who had moved to West Virginia, and that a

view of the locus in quo by the jury, which would be of importance in the trial of the case, could reasonably be had only if the case were tried in Charlotte. Furthermore, it appeared that the plaintiff was not a resident of Columbia, S. C., where the case was brought, or even in that judicial district, but of Anderson, S. C., a town in another judicial district and approximately as far from Columbia as from Charlotte, and that no one would be convenienced by a trial in Columbia except plaintiff's attorneys, a photographer who lived in Florence, S. C. and who had been employed to take photographs of the Charlotte railroad yard, and a surgeon and hospital attendants in a Florence hospital where plaintiff had been treated several months after his injury. The question of transfer under 28 U.S.C. § 1404(a) was, of course, a matter resting in the sound discretion of the District Judge; but we cannot imagine a case more clearly calling for the exercise of the power of transfer conferred by the statute; and not to transfer it was, we think, not a sound exercise of discretion.

The motion for direction of verdict was properly denied. While there was strong evidence in support of defendant's contention as to how the injury occurred including a number of admissions by plaintiff himself, the rule is well settled that, on motion for directed verdict, the evidence must be accepted in the light most favorable to plaintiff and, when so accepted, the testimony of plaintiff that he was struck at a street crossing by cars which were being negligently backed across the crossing without signal or warning, cannot be ignored and unquestionably presented questions of fact for the consideration of the jury both on the issues of negligence and contributory negligence.

We think, however, that there was prejudicial error in the admission of the letters of the claim agent relating to a compromise of the case. It is too well settled for argument that evidence of unaccepted offers of compromise or negotiations looking to compromise is inadmissible. Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 548, 23 L.Ed. 868; Arnold v. Owens, 4 Cir., 78 F.2d 495, 497; Penn Dixie Lines v. Grannick, 238 N.C. 552, 78 S.E.2d 410, 413 and cases there cited. Plaintiff admits the correctness of the rule as stated but contends that the letters were admissible to corroborate the evidence of plaintiff and to contradict the evidence of defendant's claim agent as to the circumstance under which a written statement was given by plaintiff, and that the court instructed the jury that the letters were not to be considered as offers of compromise. He further contends that, at all events, their admission was not prejudicial. We are not impressed by any of these contentions.

Plaintiff was injured on the 9th day of October 1950. On December 30, 1950 he was discharged from the hospital in Charlotte. Just prior to his discharge he gave to defendant's claim agent a written statement to the effect that his injury occurred as a result of his squatting beneath one of a string of cars several hundred feet north of the 16th Street crossing to get out of the rain, and that he was knocked down and run over when the cars were moved. He testified that he signed this statement on the promise of the claim agent that he, the claim agent, would pay plaintiff's hospital bill so that he could be discharged from the hospital. The claim agent denied this; and the letters were admitted for the purpose of corroborating plaintiff and contradicting the agent as to this matter. They had no tendency, however, either to corroborate plaintiff or contradict the claim agent. They were written March 26 and March 28, 1951, and clearly related to nothing except an attempt to compromise the case. In the letter of March 26 the claim agent said:

"I talked with my big boss about you last week. I am having a tough time trying to get what I want for you, but I am still trying. I am writ-

ing back to the Washington office about you, today. I will let you hear from me again in a week or so."

In the letter of March 28, he said:

"Today I made a little headway, and got a little more money. I would like to talk with you again, when you feel like coming to Charlotte."

And we cannot agree that the error in the admission of the letters was harmless. They would almost certainly be construed by the jury as an admission by the claim agent that the defendant was liable to plaintiff in some amount; and, in all probability, they constituted the basis upon which the jury arrived at a verdict of $5,000 for an injury which obviously called for a verdict in a much larger amount if there was liability. The jury may well have been unwilling to award plaintiff nothing when it appeared that the claim agent of the defendant was endeavoring to induce defendant to settle with him for his injury.

■ ■■ Coming to the charge of the court, we think there was error in submitting the doctrine of last clear chance to the jury in the manner in which it was submitted, and in modifying and refusing instructions asked by the defendant which would have kept the jury from misapplying that doctrine. The last clear chance doctrine was applicable neither on the plaintiff's contention as to the facts nor upon the contention of defendant. For the doctrine to be applicable it must have appeared that the operatives of the defendant's train either actually saw, or in the exercise of ordinary care in keeping a proper lookout could have seen, plaintiff in a position of danger in time to have enabled them by the exercise of ordinary care to avoid injuring him. Osborne v. Norfolk & W. Ry. Co., 233 N.C. 215, 63 S.E.2d 147; Battle v. Southern R. Co., 223 N.C. 395, 26 S.E. 2d 859. Here, according to plaintiff's contention, he was walking along a fully lighted street crossing, sober and in full possession of his faculties, when he was struck by cars being backed without signal or warning. The last clear chance

doctrine would have no application in such situation, for on the facts as contended, plaintiff would not be in a helpless position and those in charge of the cars would have had no reason to think that he would walk in front of them. See Long v. Norfolk & Western R. Co., 222 N.C. 523, 23 S.E.2d 849; Wagoner v. North Carolina R. R. Co., 238 N.C. 162, 77 S.E.2d 701, 710. On the defendant's contention as to the facts, there would be no ground for the application of the doctrine, for there is no evidence whatever to support the contention that those operating the train could have seen plaintiff who had crawled under a box car several hundred feet from the crossing to get out of the rain. See Hammers v. Colorado Southern, N. O. & P. R. Co., 128 La. 648, 55 So. 4, 39 L.R.A.,N.S., 685; Watts v. Seaboard Air Line R. Co., 167 N.C. 345, 83 S.E. 615.

■ The only possible theory upon which the last clear chance doctrine could have any application in the case is that plaintiff was in such a drunken condition on the crossing as to be oblivious to the approach of the backing cars and that a proper lookout by those in charge of the cars would have discovered him in a position of danger in time to protect him against injury. No evidence was introduced by either side to sustain such theory and the jury under the instruction of the court was at liberty to apply the last clear chance doctrine to an entirely different situation, i. e., to the situation in which the plaintiff was under the cars, north of the crossing, a situation to which it could have no possible application on the evidence before the court. In evident attempt to guard against such misuse of the doctrine, defendant requested the court to give the jury the following instruction:

"11. That if the jury finds that the plaintiff, who had no duty to perform for the defendant, Southern Railway Company, went upon its yard and onto a live track while under the influence of whiskey, and placed himself under a box car, and between the rails, that he would be

guilty of contributory negligence and could not recover and it would be the duty of the jury to find for the defendant."

The court gave this charge but modified it by charging, "But, it is for you to determine from all the evidence in the case whether he did that, and it is also for you to determine in connection with my other charge in the case as to whether or not the agents of the defendant knew the plaintiff was in a helpless condition." There is absolutely no evidence to sustain a contention that any of defendant's employees operating its train knew that plaintiff was under one of its cars in a helpless condition, or that he was in such a position that he could have been seen by those operating the train. There is evidence that more than an hour before the injury other employees saw plaintiff elsewhere in its yard in an intoxicated condition; but this was not sufficient to invoke the last clear chance doctrine with respect to the backing of the cars that caused his injury, nor did it impose upon the employees of defendant the duty of searching under cars in its yard before moving them, on the chance that plaintiff in his intoxicated condition might have crawled under them.

The court refused to give the 12th prayer for instruction requested by defendant, which was as follows:

"The Court charges the Jury that if the plaintiff walked North across 16th Street between the second and third tracks in the way and manner as testified to by defendant's witnesses and continued in a northerly direction into the defendant's yards, and at a time when the defendant was operating its engine in a southerly direction south of 16th Street, that there was no duty imposed by law upon the defendant, or its agents, to thereafter look under standing box cars on its yard north of 16th Street, to ascertain if plaintiff was under the same before coupling to said cars and moving the same, and that the defendant would not be guilty of negligence in attach-ing to said standing cars and moving the same."

■ This requested instruction correctly stated the law applicable to the evidence relied on by defendant and it should have been given. Watts v. Seaboard Air Line R. Co., supra, 167 N.C. 345, 83 S.E. 615; Papich v. Chicago, M. & St. P. R. Co., 183 Iowa 601, 167 N.W. 686; Hammers v. Colorado Southern, N. O. & P. R. Co., 128 La. 648, 55 So. 4, 34 L.R.A.,N.S., 685; 44 Am.Jur. p. 652; 75 C.J.S., Railroads, § 910, p. 310. The case of Buckner v. Southern R. Co., 194 N.C. 104, 138 S.E. 535, is not in point, for there the car which was moved was one which the employees of a shipper had been engaged in unloading and the employees of defendant knew that they were in or about the car when they moved it. The case was distinguished by the court from the Watts case, supra, on this ground.

■ In this connection, we think that another error in the charge consisted in changing defendant's second prayer for instructions relating to contributory negligence of plaintiff in placing himself under a car on a live track. Defendant requested the court to charge as follows:

"The Court charges the Jury that from all the evidence offered by plaintiff and defendant, the various railroad tracks located North and South of 16th Street crossing were what is known in railroad parlance, and in law, as 'live tracks', and the Court further charges the Jury that one who enters in and upon a live track and places himself under a car located and standing on the track, is guilty of contributory negligence as a matter of law."

The court changed this instruction as follows:

"2. The Court charges the jury that from all the evidence offered by plaintiff and defendant, the various railroad tracks located North and South of 16th Street crossing were what is known in railroad parlance, and in law, as 'live tracks'—that

means tracks that are more or less continuously in use—and the Court further charges the jury that when one who is in possession of his senses and faculties enters in and upon a live track that is continuously in use, and places himself under a car located and standing on the track, he is guilty of contributory negligence as a matter of law."

It was error to make this modification for the reason that the interpretation of possession of senses and faculties" could only have been interpreted as meaning that the rule would not apply to plaintiff if he was not in possession of them by reason of drunkenness, and it is well settled that drunkenness does not mitigate contributory negligence, but a drunken man is held to the same standard of care as a sober man. 38 Am.Jur. pp. 883–884; Smith v. Norfolk & S. R. Co., 114 N.C. 728, 19 S.E. 863, 923, 25 L.R.A. 287.

 On the question of granting a new trial on the issue of damages while allowing the verdict to stand as establishing liability on the part of the defendant, little need be added to what we said as to that matter in denying the defendant's petition for writ of certiorari. See Southern Ry. Co. v. Madden, 4 Cir., 224 F.2d 320. The facts were fully before us when that decision was rendered and what was there said had the most careful consideration. The subsequent trial on the issue of damages, resulting in a verdict of $75,000, merely serves to emphasize that the verdict of $5,000 was not merely totally inadequate but could have been rendered only as a sympathy or compromise verdict and could not reasonably have been rendered if the jury had found real liability on the part of defendant. To allow such a verdict to stand as establishing liability while granting a new trial on the issue of damages alone is, in our opinion, not sustainable as a sound exercise of discretion.

What was said by Chief Justice Rugg of Massachusetts in Simmons v. Fish, 210 Mass. 563, 97 N.E. 102, quoted by us with approval in our prior opinion and in Schuerholz v. Roach, 4 Cir., 58 F.2d 32, 34, we regard as a sound statement of the law applicable and as dispositive of the question before us, viz.:

" 'It is inconceivable that any jury, having agreed upon the issue of liability, should have reached such a determination as to damages. They had no right to consider the subject of damages until they had settled the liability in favor of the plaintiff. The verdict itself is almost conclusive demonstration that it was the result not of justifiable concession of views, but of improper compromise of the vital principles which should have controlled the decision. The inference is irresistible that it could have been reached only by certain of the panel conceding their conscientious belief that the defendant ought to prevail upon the merits in order that a decision might be reached. It is possible that a trial judge might let such a verdict stand for various reasons, as for instance if on the whole it should appear to him that a verdict for the defendant ought not to have been set aside. But it would be a gross injustice to set aside such a verdict as to damages alone against the protest of a defendant, and force him to a new trial with the issue of liability closed against him when it is obvious that no jury had ever decided that issue against him on justifiable grounds. Although the decision of a motion for a new trial rests within the discretion of the trial court * * * it is a sound judicial and not an arbitrary discretion which must be exercised. A failure in this regard is subject to revision.' "

See also Rawle v. McIlhenny, 163 Va. 735, 177 S.E. 214, 221, 98 A.L.R. 930.

For the reasons stated, the judgment below will be reversed and the case will be remanded for a new trial on all issues and with direction that it be transferred for trial to the Western District of North Carolina at Charlotte.

Reversed.