**INTERGRAPH CORPORATION, Plaintiff,**

v.

**STOTTLER, STAGG & ASSOCIATES, INC., et al., Defendants.**

**Civ. A. CV84–L–5437–NE.**

United States District Court,
N.D. Alabama,
Northeastern Division.

Oct. 16, 1984.

H. Harold Stephens, Lanier, Shaver & Herring, Huntsville, Ala., for plaintiff.

Jack E. Held, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, Ala., for defendants.

### MEMORANDUM

LYNNE, Senior District Judge.

Before the Court is the motion of the defendants to dismiss this action for lack of personal jurisdiction, or, in the alternative, to transfer this action to the United States District Court for the Middle District of Florida. Because the Court is convinced that this action should be transferred pursuant to 28 U.S.C. § 1404(a), there is no need to reach the jurisdictional issue.

This action arose from the sale of certain computer equipment by the plaintiff, an Alabama corporation, to the defendants (hereinafter collectively referred to as "Stottler, Stagg"), all of which are Florida corporations located in Cape Canaveral, Florida. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship).

The relevant facts revealed by the pleadings and affidavits are these. In the summer of 1982, Wade Herod, director of operations for Stottler, Stagg, saw an advertisement about Intergraph Corporation ("Intergraph") and its computers in a national magazine. He called Intergraph's Huntsville headquarters and expressed an interest in purchasing an Intergraph computer. Shortly thereafter, Mr. Chet Barr, a Florida resident and local Intergraph sales representative, contacted Mr. Herod and arranged for a meeting at Stottler, Stagg's Cape Canaveral offices. Similar meetings followed, culminating in a formal sales presentation by Intergraph's Florida sales representatives to Stottler, Stagg officials in Cape Canaveral. Following this sales presentation, Intergraph's Florida sales personnel made several more visits to Stottler, Stagg's offices to negotiate and finalize a sale agreement. Ultimately an agreement was reached, and on December 29, 1982, a purchase order prepared and signed by the president of Stottler, Stagg was mailed to Intergraph in Huntsville. Subsequently, Intergraph delivered a good portion of the equipment ordered and installed and tested it at Stottler, Stagg's Cape Canaveral facility. The contract also provided for some on-site training of Stottler, Stagg personnel in the operation of the equipment, to be conducted by Intergraph personnel in Florida. Intergraph was also to service and

maintain the equipment following its delivery and installation.

Intergraph correctly points out, however, that not all aspects of this transaction occurred in Florida. For instance, prior to the execution of the sale contract, at least three employees of Stottler, Stagg came to Intergraph's Huntsville offices—albeit at Intergraph's request—to attend a demonstration of the computer equipment. After the contract was executed, and again at the insistence of Intergraph, various Stottler, Stagg employees came to the Huntsville facility for some of their training in the operation of the equipment. Finally, Intergraph points out that some (but not all) of the computer equipment sold was manufactured and developed by Intergraph in Alabama.

Following delivery, installation, and on-site testing of a good portion of the equipment by Intergraph employees at Stottler, Stagg's offices, the Florida buyer began complaining about the equipment and its performance. On several occasions Intergraph maintenance and service personnel in Florida attempted to correct or investigate the problems complained of. Ultimately, Stottler, Stagg refused to pay for the equipment as agreed. Intergraph then filed this suit for breach of contract. Shortly thereafter, Stottler, Stagg brought suit against Intergraph for misrepresentation of the equipment's capacities and breach of contract in the delivery of defective equipment. Stottler, Stagg's suit is currently pending in the United States District Court for the Middle District of Florida.

It is against this background that the Court must consider Stottler, Stagg's motion to transfer the suit filed by Intergraph. Title 28, U.S.C. § 1404(a) provides the controlling criteria:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

It is clear that this action "might have been brought" in the Middle District of Florida. It is clear that Stottler, Stagg would have been amenable to suit there, and venue would, of course, be proper there since all the defendants concededly reside in that district. 28 U.S.C. §§ 1391(a), 1391(c).

█ The propriety of transfer, then, boils down to this: would a transfer best serve the convenience of the parties and the witnesses and the interests of justice? In deciding this question, the plaintiff's choice of forum must be given considerable weight. *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir.1981). However, if the plaintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expedition of the discovery and trial processes, a district court has discretion to disregard the plaintiff's choice of forum and transfer the action to a forum that better promotes these interests. *Id.* The weighing of relative inconveniences and the determination of the forum in which judicial resources can most efficiently be utilized is a matter committed to the discretion of the trial court. *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1966). *See also Howell v. Tanner*, 650 F.2d at 616.

█ In the present case, there can be little doubt that the Middle District of Florida would be a much more convenient forum for the expeditious resolution of this controversy. To begin with, Intergraph appears to be far more capable of litigating outside its home state than is Stottler, Stagg. Intergraph admittedly sells and services computers in many states, including Florida. Although it is headquartered in Alabama, it has sales and service personnel in Florida and obviously conducts a fair amount of business there. By contrast, the defendant appears to be far more localized, and conducts no business in Alabama aside from its purchase of the equipment that is the focal point of this litigation. Stottler, Stagg would suffer substantial inconvenience if forced to defend this suit in Ala-

bama. In light of its significant presence in Florida, Intergraph would suffer little or no inconvenience if forced to prosecute this suit in Florida. Thus, when the relative convenience of the parties is put into the balance, the scales tip decidedly in favor of transferring this action to the Middle District of Florida.

When the convenience of material witnesses and the availability of evidence are considered, the result is the same. The testimony of Intergraph's Florida sales and service representatives, who not only conducted many of the sales presentations and negotiating sessions in Florida, but also installed the equipment at Stottler, Stagg's Cape Canaveral location and tested and serviced it there, will surely play a significant role in the resolution of this controversy. These Florida-based employees clearly have material testimony to provide concerning the existence and nature of the system's alleged defects; the steps, if any, taken to correct those defects; the method of installation of the equipment; the representations made by Florida sales personnel regarding the system's capabilities; and so on. Similarly, all of the Stottler, Stagg employees who have material testimony to offer in this matter reside in Florida. While a few of Intergraph's Alabama employees may also have material testimony to provide concerning the nature of the contract and the capabilities of the system, it is apparent that the predominant convenience of the witnesses favors transfer of this action to Florida.

Another significant factor warranting transfer to Florida is the fact that the equipment itself is located in the State of Florida. It cannot be doubted that the deficiencies in the performance and capaci-

ty of the equipment sold by Intergraph will ultimately be raised by Stottler, Stagg in the defense of this suit. As the defendants point out, the proof of Stottler, Stagg's case will very likely involve a demonstration of the equipment's unsuitability through a jury view of the equipment. The need for a jury view in a particular forum has been held to be a material factor warranting transfer in other cases. *See, e.g., Koehring Co. v. Hyde Construction Co.,* 324 F.2d 295 (5th Cir.1963). *See also Early & Daniel Co. v. Wedgefield,* 164 F.Supp. 414 (M.D.N.C.1958) (action would be more appropriately and conveniently settled if transferred to a forum closer to site where defective goods located).

There is another very important factor favoring transfer. The defendants contend that they are not amenable to suit in Alabama, and that it would be inconsistent with notions of "fair play and substantial justice" to force them to defend this suit in Alabama. *Cf. International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This raises a "subtle and difficult problem" of personal jurisdiction, *Burger King Corp. v. MacShara,* 724 F.2d 1505, 1508 (11th Cir.1984). The question of whether a state may exercise specific jurisdiction[1] over a nonresident based on the mere fact of his contractual dealings with a resident plaintiff is one that has "deeply divided the federal and state courts." *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 445 U.S. 907, 909, 100 S.Ct. 1087, 1088, 63 L.Ed.2d 325 (1980) (White, J., dissenting from denial of certiorari). Indeed, the Supreme Court recently acknowledged the ongoing controversy as to whether mere purchases by a nonresident from a forum seller could ever be a

---

**1.** There has been no contention that Stottler, Stagg has those contacts with the forum of a "continuous and systematic" nature required to justify a court's assertion of "general" jurisdiction over a defendant in litigation unrelated to forum contacts. *See Helicopteros Nacionales de Colombia v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404, 411, n. 8 (1984) (discussion of "general" versus "specific" jurisdiction). Thus,

the issue here is one of specific jurisdiction—are the contacts of the defendant with the forum *in connection with the transaction in issue* sufficient to give the Court in personam jurisdiction over the company *for purposes of this particular litigation? Cf. Pepsi-Cola Bottling Co. of Ft. Lauderdale-Palm Beach, Inc. v. Buffalo Rock Co., Inc., et al.,* 593 F.Supp. 1559, 1562 (N.D.Ala. 1984).

sufficient basis, standing alone, for the exercise of personal jurisdiction—even with regard to litigation arising out of the purchases. *See Helicopteros Nacionales de Colombia v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404, 413 n. 12 (1984). The Supreme Court's treatment of the issue in *Helicopteros* is ample evidence that the jurisdictional question presented in the case *sub judice* is an open and troubling one.[2]

In the face of such a subtle and complex question of constitutional law, the considerations warranting transfer become all the more compelling. Judicial economy would hardly be furthered by retaining the action in this district when doing so would require a decision on a close question of constitutional law, a decision which would surely require a substantial investment of judicial resources by this Court and would almost certainly generate one or more appeals. Whether those appeals came before or after a judgment on the merits, this litigation would undoubtedly be prolonged and the costs for both the parties and the judicial system would be substantially increased. The existence of other factors warranting transfer of this action to Florida, where the district court would clearly have jurisdiction to render a judgment on the merits, counsels strongly against stepping into the muddy waters of this jurisdictional morass.

Particularly since plaintiff maintains a substantial presence in Florida in the form of sales and service representatives, and since those representatives have been most intimately involved in the transactions which are at issue in this case, and since the center of gravity of this controversy is clearly in Florida rather than Alabama, this Court is convinced that it should exercise its discretion to transfer this case pursuant to 28 U.S.C. § 1404(a).

2. Although this Court recently found jurisdiction available over a nonresident who purchased goods from the forum seller in the *Buffalo Rock* case, *supra,* n. 1, that case involved a transaction more intimately connected to Alabama than the one involved here. Questions of personal jurisdiction inherently require a thorough analysis of the totality of the circumstances, and each case must be decided on its own facts. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 499 (5th Cir.1974). Because there is ample reason to transfer this case to Florida, the Court need not decide whether its decision in *Buffalo Rock* should be extended to uphold jurisdiction on the particular facts of this case.