Harold L. MIMS, as the Executor of the Estate of Clifton V. Mimms, deceased, Plaintiff,

v.

PROCTOR AND GAMBLE DISTRIBUTING COMPANY, Defendant.

Harold L. MIMS, Plaintiff,

v.

PROCTOR AND GAMBLE DISTRIBUTING COMPANY, Defendant.

Civ. A. Nos. 66-276, 66-278.

United States District Court
D. South Carolina,
Columbia Division.

Sept. 1, 1966.

John C. West, Kenneth L. Holland and H. W. C. Furman, Camden, S. C., for plaintiff.

Claude M. Scarborough, Jr., of Nelson, Mullins, Grier & Scarborough, Columbia, S. C., for defendant.

HEMPHILL, District Judge.

Defendant asks this court to transfer companion cases from the District Court of South Carolina to the United States District Court for the Eastern District of Tennessee, generally for the convenience of parties and witnesses, and in the interest of justice, and especially on twelve grounds subheaded and paragraphed in the motion. It seeks application of the doctrine of *forum non conveniens* under the provisions of 28 U.S.C. § 1404(a).[1] Plaintiffs resist, each insisting on (the) right to choose the forum within the limits of the Federal Venue statutes,[2] particularly 28 U.S.C. § 1391(c) which provides:

> A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

There is no dispute as to defendant's corporate capacity, domestication, licensing and other requisites of doing business such as to qualify South Carolina as its "residence" for the purposes here.

These actions seek damages for the wrongful death of Clifton V. Mimms and Elizabeth S. Mimms. The Clifton V. Mimms action was instituted in the Court of Common Pleas for Kershaw County on March 21, 1966, and was subsequently removed to this court. The Elizabeth S. Mimms action was instituted on April 13, 1966, in this court. These actions arise out of an automobile accident which occurred on November 15, 1965, on U. S. Highway No. 61, approximately six miles west of Chattanooga, Tennessee. Clifton V. Mimms, his wife Elizabeth S. Mimms, and James Allen Neely, the alleged agent and servant of the defendant, were all killed in this accident. Elizabeth S. Mimms predeceased her husband by several hours. All persons involved in this accident were treated at the Newell Hospital in Chattanooga, Tennessee. The Mimms were residents of the District of Columbia or South Carolina, or both, at the time of the accident. Harold L. Mims, the Executor of the Estate of Clifton V. Mimms, is a resident of the State of South Carolina. The deceaseds had no children, but were survived by a family, consisting, among others of Harold L. Mims, the plaintiff, Leon H. Mims, Hershel N. Mims, Belton Mims, and Mrs. Hazel Mims Harmon, "all of whom will testify as to the decedents' earnings,

---

1. 28 U.S.C. § 1404(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

2. 28 U.S.C. § 1391.

ages and the family loss in connection with their deaths." [3]

Defendant, in its motion(s) lists for special considerations, the following, which the court finds to be true:

(a) The plaintiff, although a resident of the State of South Carolina, is acting in his representative capacity as Executor of the Estate of Clifton V. Mimms, Deceased, having been so appointed, upon information and belief, by Order of a Court in the District of Columbia, in which jurisdiction Clifton V. Mimms was a resident at the time of his death.

(b) The injury set forth in the Complaint herein is alleged to have occurred in the State of Tennessee, and the defendant would show that it occurred in the Chattanooga area of said state, and the plaintiff's claim did not arise out of, or have any connection with, any business transacted by the defendant in this state and district;

(c) The defendant is a foreign corporation, with its principal place of business in the City of Cincinnati, Ohio, in which state it is a citizen, but the said defendant also does business in the State of Tennessee and this action could have been brought by the plaintiff in the United States District Court for the Eastern District of Tennessee, Southern Division.

\*   \*·   \*   \* ,   \*   \*

(e) The expense of bringing in witnesses to the City of Columbia, South Carolina, for the trial of this action, from the State of Tennessee, if the witnesses are willing to come, will be great and will entail loss of time on the part of said witnesses.

\*   \*   \*   \*   \*   \*

(j) On the trial of this action, it will be necessary for this court to interpret a number of applicable ordinances or statutes of the State of Tennessee and court decisions of said state, and this can much more readily

or easily be accomplished if the venue of this action is transferred to the United States District Court in the State of Tennessee.

\*   \*   \*   \*   \*   \*

(l) Upon information and belief, the plaintiff's testator died several hours after the collision out of which this law suit arose in a hospital in the State of Tennessee, and, if the venue of this action were transferred to the State of Tennessee for trial, the parties to this suit would have relative ease of access to the sources of proof concerning the cause of death, the manner of death, and other issues related to plaintiff's claim for damages.

Of less certainty because of the obvious disagreement are other assertions by affidavit. Defendant says also that:

(d) All of the numerous witnesses whose testimony will be material and necessary on behalf of the defendant, and all of the persons who witnessed the occurrence described in the plaintiff's Complaint, upon information and belief, reside in the State of Tennessee, and are beyond the reach of the processes of this court.

\*   \*   \*   \* ,   \*   \*

(f) In the event the witnesses, or any of them, refuse to come to the State of South Carolina for the trial of this action in the City of Columbia, the defendant will be required to take their depositions for use on the trial of the case, which, in the first instance, will not be as effective as the live testimony of said witnesses, and, in the second instance, will require the defendant to go to great and unnecessary expense, all of which could be avoided if the case were tried in the State of Tennessee.

(g) This law suit arises out of an automobile collision in which the occupants of both vehicles involved were killed, and the defendant would show that the scene itself in this instance will, in all probability, be of material importance in the determination of

---

3. From affidavit presented by plaintiff(s) at the hearing.

the issues of liability involved in this action, and a jury drawn from the area in which the collision occurred could more readily visit the scene, or be familiar with it, than a jury drawn to try this action in the State of South Carolina.

(h) The defendant would further show that occupying the vehicle in which plaintiff's testator died, was the plaintiff's testator's wife, who left, upon information and belief, certain heirs who are residents of the State of Tennessee and, further, upon information and belief, the Executor of the Estate of the wife of the plaintiff's testator is a resident of the State of Tennessee and it is indicated that suit would be brought in said state; that, if the Executor of the Estate of the wife of plaintiff's testator institutes suit in the United States District Court in Tennessee, or in the State Court where it could be removed to the United States District Court in Tennessee, that action and this could be consolidated for trial, as the plaintiff here has made claim that he has some interest in said action, whereas the Executor of the Estate of the wife of plaintiff's testator, being a resident of Tennessee, could never bring action in the State of South Carolina, and therefore the venue of this action should be removed to said Court in Tennessee so that the Tennessee Court could consolidate all issues for trial;

(i) The driver of the vehicle owned by the defendant, who died as a result of the collision referred to in the plaintiff's Complaint herein, is not subject to the jurisdiction of this court and cannot be added as a party in this action, but said driver may be an indispensable party to the determination of all of the issues involved in this action, and certainly is a necessary party to conclusion of all of said issues, and the Executor of his Estate could be made a party if the venue of

this action were transferred to the State of Tennessee for trial;

\*   \*   \*   \*   \*   \*

(k) By transferring the venue of this action to the State of Tennessee, where this cause of action arose, the Trial Court can avoid the unnecessary problems in conflicts of laws and in law foreign to this jurisdiction.

Supporting these claims is the affidavit of counsel for defendant as to witnesses:

1. Alvin C. Johnson, the investigating officer of the Tennessee Highway Patrol, can testify as to the position of the vehicles involved in the accident when he arrived at the scene of the accident, he can describe the scene of the accident and give the applicable highway regulations governing traffic at the scene;

2. Dr. Rudolph P. Landry, a member of the staff of Newell Hospital at Chattanooga, Tennessee, can testify to the time of the arrival of Mr. and Mrs. Mimms at the hospital, the time of death of Mr. Mimms and the condition of both upon their admission to the Newell Hospital;

3. James Love, a truck driver, who arrived at the scene of the accident shortly after the accident had occurred will be able to testify as to the position of the cars, the condition of the occupants of both vehicles, the weather conditions, and the amount of traffic he observed on the highway immediately before the accident;

4. David Randolph, an operator of a service station in Chattanooga, Tennessee, arrived at the scene of the accident some short time after it occurred, and will be able to testify as to the position of the automobiles, the physical condition of the occupants of such automobiles, the terrain and highway conditions prevailing at the time of the accident, and will be able to testify to the time the investigating officer arrived. This witness will also be able to testify as to his at-

tempts to hear something said by Mr. Mimms;

5. Roy Hudson and Gary Shirley, ambulance attendants, who took Mr. and Mrs. Mimms to the Newell Hospital, will be able to testify as to the Mimms' condition when they were put into the ambulance and when they arrived at the Newell Hospital, as well as to the position of the cars at the time of their arrival at the scene of the accident; and

6. All medical information concerning the parties to this accident is located at the Newell Hospital in Chattanooga,. Tennessee, which information will most probably be needed by both plaintiffs and defendant in these actions, as, at this time, no eye witnesses to the accident have been found, the scene of the accident which is located near Chattanooga, Tennessee may also be important.

Also tendered is the affidavit of Tennessee Highway. Patrolman Alvin C. Johnson, who avers, among other things:

\*   \*   \*   \*,   \*   \*

3. That on November 15, 1965, in the course and scope of his aforesaid employment, he was dispatched to investigate on behalf of the Department of Safety of the State of Tennessee an automobile accident which occurred on U. S. Highway Nos. 41 and 64 in Marion County, Tennessee, approximately eight miles west of Chattanooga, Tennessee, involving an automobile occupied by Clifton V. Mimms and Elizabeth Mimms and another automobile occupied by Jimmy Neely, in which accident all of the aforesaid occupants of the two vehicles were fatally injured.

4. That he made an on-the-scene investigation of the aforesaid accident at the place of its occurrence, before either of the vehicles or their occupants had been removed from the scene.

\*   \*   \*   \*,   \*   \*

6. That he would not be willing or able to appear personally in any court in the State of South Carolina to testify concerning the matters hereinbelow referred to, but would be willing and able to appear personally and testify in any court in Hamilton County, Tennessee concerning such matters.

The terminal physician of Mrs. Mimms also swore he was not willing or able to appear in South Carolina but would appear in Tennessee.

At the hearing plaintiffs insisted there was no real issue of liability, thus the defendant's Tennessee witnesses were unnecessary, and, as the actions were for wrongful death—rather than pain and suffering—the South Carolina witnesses, beneficiary kin who suffered the loss, could testify better and with more knowledge on the remaining issue of damages. Defendant's counsel insist that liability is an issue. This puts the court in position of either granting unwarranted summary judgment on the issue of liability in order to support plaintiff, or of recognizing that special circumstancès and/or facts, latent to the record now before the court, may be brought out on trial.

At this stage of the proceedings decisions as to discovery are not in issue; the court will not preempt. In addition to defenses of failure of plaintiff to state a claim, improper venue, et cetera, defendant pleads a general denial of the material allegations of the complaint. This joins issues of negligence, proximate cause, damages, and may involve others such as *respondeat superior*.

In this climate the court proceeds. It cannot justify its decision on the unchaste corner stone of "broad discretion:" to travel so lightly on the road of responsibility would avoid the welcome burden of giving reason for opinion. Necessarily *stare decisis* becomes the companion of research and decision.

The landmark decision of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), is convincing evangelism here:

The principle of forum non conveniens is simply that a court may resist im-

position upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a stategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself. Id. at 507, 67 S.Ct. at 842.

\*    \*    \*    \* .   \*    \*

If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Id. at 508, 67 S.Ct. at 843.

\*    \*    \*    \*    \*    \*

The court likewise could well have concluded that the task of the trial court would be simplified by trial in Virginia. If trial was in a state court, it could apply its own law to events occurring there. If in federal court by reason of diversity of citizenship, the court would apply the law of its own state in which it is likely to be experienced. The course of adjudication in New York federal court might be beset with conflict of laws problems all avoided if the case is litigated in Virginia where it arose. Id. at 511, 512, 67 S.Ct. at 844.

In *Gilbert*, a Virginia resident brought diversity suit in the United States Court for the Southern District of New York for alleged negligence (of Gulf) in making a delivery of gasoline causing explosion and fire in Lynchburg and destroying real property and contents. Defendant was a Pennsylvania Corporation with agents authorized to receive service of process in both Virginia and New York. The headnote in Lawyers Edition, 91 L.Ed. 1055, recites concisely that all proof lay in Virginia and resort to New York courts was because recovery sought was of a sum which would stagger the imagination of a Virginia jury unaccustomed to dealing in large amounts, and a Virginia jury might not be free from local influences and preconceived notions. The District Court dismissed [4] for lack of venue under the doctrine of *forum non conveniens, the Circuit Court* reversed, and on certiorari the United States Supreme Court vacated the order of the Circuit Court and reinstated the District Court's remitting the cause to the courts of plaintiff's own community of Lynchburg, Virginia. The analogy to the case at bar is apparent.

Of later vintage is Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), a case in which forty (40) wrongful death actions were brought in the United States District Court for the Eastern District of Pennsylvania, all of which arose out of a

---

4. Formerly the motion was to dismiss rather than transfer.

Massachusetts plane crash. The district court granted transfer to Massachusetts where most of the witnesses lived, and where the Massachusetts law would be applied. The Third Circuit Court of Appeals vacated the district court order on the grounds that the various personal representatives, who had qualified to bring suit as fiduciaries in Pennsylvania, had not qualified to sue in Massachusetts. The United States Supreme Court reversed and remanded to the district court. The principal issue revolved around the application, interpretation of the words of the statute "where it may have been brought" [5] as it affected the right of plaintiffs to pursue in Massachusetts, but the court reviewed, in part, applicable law on the general subject. Specifically it held that a section 1404(a) transfer would not alter the state law to be applied, and the transferee district must apply the law of the transferor state under the Rule of Erie [6] and the principle of uniformity which requires federal courts in diversity cases to apply the "laws of the states in which they sit." [7] In discussing the applicable law the Court said:

> It is possible that such a difference in damage rules could make the plaintiffs relatively more dependent upon witnesses more conveniently located for a trial in Pennsylvania. In addition, it has long been recognized that: "There is an appropriateness * * * in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055, [1063]. Thus, to the extent that

Pennsylvania laws are difficult or unclear and might not defer to Massachusetts laws, it may be advantageous to retain the actions in Pennsylvania where the judges possess a more ready familiarity with the local laws. 376 U.S. 644, 645, 84 S.Ct. 805, 823.

\* \* \* \* \* \*

In pointing to these considerations, we are fully aware that the District Court concluded that the relevant Pennsylvania law was unsettled, that its determination involved difficult questions, and that in the near future Pennsylvania courts might provide guidance. We think that this uncertainty, however, should itself have been considered as a factor bearing on the desirability of transfer. Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient. We do not suggest that elements of uncertainty in transferor state law would alone justify a denial of transfer; but we do think that the uncertainty is one factor, among others, to be considered in assessing the desirability of transfer. Id. at 645, 646, 84 S.Ct. at 824.

The principles merit consideration here.

Perhaps a different result would evolve here had not the codification of section 1404(a) liberalized the rule of *forum non conveniens,* as so well explained in Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), when the Court held:

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. As this Court said in Ex parte Collett, 337 U.S. 55–61, 69 S.Ct. 944, 947, 959, 93 L.Ed. 1207 [1211], [10 A.L.R.2d 921,] Congress, in writ-

5. This is not the problem before this court. Here the issues are "convenience," "ends of justice." It is significant to note that in Massachusetts the recovery limits are 2 to 20 thousand dollars; Pennsylvania has no such limit.

6. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

7. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941). See also Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 148 (1941). But all parties to this litigation agree the laws of Tennessee shall apply except as to the Statute of Limitations which will not be used to bar recovery here.

ing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer. When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader. Id. at 32, 75 S.Ct. at 546.

█ The number of witnesses is a factor to be considered as well as the nature and quality of the testimony, the distances and inconveniences involved. Erie R. R. Co. v. Fritsch, 72 F.2d 766 (3rd Cir. 1934); Keller-Dorian Color Film Corp. v. Eastman Kodak Co., 88 F.Supp. 863 (S.D.N.Y.1949); Anthony v. RKO Radio Pictures, Inc., 103 F.Supp. 56, 58 (S.D.N.Y.1951); Berk v. Willys-Overland Motors, Inc., 107 F.Supp. 643 (D.Del.1952); Leppard v. Jordans Truck Line, 110 F.Supp. 811 (E.D.S.C. 1953); Southern R. R. Co. v. Madden, 235 F.2d 198 (4th Cir. 1956).

A case factually similar to the one here presented is Leppard v. Jordans Truck Line, supra. In holding that the case should be transferred, the court reviewed the facts brought out by the defendant:

The showing which has been made to me proves that the accident occurred near Monroe, North Carolina, and that a United States District Court sits in Charlotte, North Carolina, a distance of only twenty-six miles from the site where the accident occurred. All eyewitnesses to the accident, except the driver of the truck owned by Jordans Truck Line, live in Kannapolis, North Carolina and those who know anything about the accident including the physician who saw the deceased, the photographer who will testify, as well as a surveyor, reside in or near Monroe. Since I have held that the law of North Carolina applies, I think it would be proper to transfer the cause of action to the Western District of North Carolina, first for the convenience of the witnesses, and second, because it is apparent that the jury trying the case may desire to view the scene of the accident.

\*　　\*　　\*　　\*　　\*　　\*

I do not think, however, that the court should hesitate to transfer an action away from the forum of plaintiff's residence where the conditions of § 1404(a) have been met.

There are many cases holding that a transfer is warranted where it appears that all of the witnesses and documents are more accessible in the transferee court. See, e. g., Cressman v. United Air Lines, Inc., infra; Cox v. Food Fair Stores, Inc., infra; Jurgelis v. Southern Motors Express, Inc., 169 F.Supp. 345 (E.D.Pa.1959); Findeaile v. Chesapeake & Ohio R. R. Co., 159 F.Supp. 629 (E.D. N.Y.1958). It would be inconvenient and expensive for either party to this action to transport the available witnesses from Tennessee to Columbia, South Carolina and to maintain the witnesses in Columbia for the duration of the trial of these actions. In Republique Francaise v. M. K. & T. R. Co., 85 F. Supp. 295 (N.D.Tex.1949), a motion to transfer was granted on a showing that the witnesses to the accident resided in the transferee forum district and that there would be many such witnesses, that the expense of bringing the witnesses from the transferal forum to the transferee forum, a distance of over three hundred miles, would be heavy and that the somewhat unsatisfactory deposition method could be avoided by the transfer:

The Court of Appeals for the Fourth Circuit in Southern R. R. Co. v. Madden, 235 F.2d 198 (4th Cir. 1956) held

that a transfer should have been granted and reviewed the facts relevant to transfer:

> On the question of transfer, it appeared not only that plaintiff's injury occurred in Charlotte, North Carolina, and that the question of liability was governed by North Carolina law, but also all of the witnesses to the occurrence and to the treatment of plaintiff in a Charlotte Hospital following his injury lived in Charlotte, except one who had moved to West Virginia, that a view of the *locus in quo* by the jury, which would be of importance in the trial of the case, could reasonably be had only if the case were tried in Charlotte.
>
> \*    \*    \*    \*    \*    \*
>
> The question of transfer under 28 U.S.C. § 1404(a) was, of course, a matter resting in the sound discretion of the District Judge; but we cannot imagine a case more clearly calling for the exercise of the power of transfer conferred by the statute; and not to transfer it was, we think, not a sound exercise of discretion.

It should be noted that the facts relevant to a transfer in the *Madden* case, supra, were not as strong as the facts in the case now before the court, as in the *Madden* case there were several witnesses who resided in South Carolina, the transferor forum.

■ As stated in Brown v. Woodring, 174 F.Supp. 640 (M.D.Pa.1959):

> The ultimate inquiry is where trial will best serve the convenience of the parties, the witnesses, and the ends of justice; to find that forum in which inconveniences of all parties and witnesses may be at an irreducible minimum.

■ The plaintiffs can make no real showing of convenience to them in retaining these actions in the District Court of South Carolina. Indeed, a transfer of the action as requested by the defendant will make the trial of this law suit more convenient to the plaintiffs as well as to the defendant. The defendant is not bound to produce such a strong, favorable balance that his factors favoring transfer must greatly preponderate those of the plaintiffs. "[D]isturbing [the] plaintiffs' choice of forum is no longer a rarity because of § 1404(a)". Paragon-Revolute Corp. v. C. F. Pease Co., 120 F.Supp. 488 (D.C.Del. 1954). See also, note, 99 L.Ed. 799 at 802–825; 10 A.L.R.2d 932.

In White v. Employers Liab. Assur. Corp., infra, Judge Wyche stated:

> Where the defendant produces evidence to show that a great majority of the material witnesses, the parties to the accident, and the scene of the events upon which the action is based, are all in another district at some distance, the defendant makes a *prima facie* showing for a transfer of the action, and the burden is shifted to the plaintiff to show that at least one of the requirements of the statute have not been satisfied.

■ Conceding that plaintiff's initial choice of forum must be given some consideration, it should be noted that the first connection that these cases have with the United States District Court of South Carolina is the plaintiff's residence here. Plaintiff was named executor of his brother's Will by the United States District Court in the District of Columbia. The weight to be given the consideration of the plaintiff's initial choice of forum is much less where none of the conduct complained of occurred in the forum selected by the plaintiff. In Chicago, R. I. & P. R. Co. v. Igoe, 220 F.2d 299 (7th Cir. 1955), the plaintiff, administratrix of her husband's estate, brought an action against the Chicago, R. I. & P. R. Co. for the wrongful death of her husband. The plaintiff's husband was killed in an accident in Iowa and plaintiff was appointed administratrix by an Iowa Court. The plaintiff initiated her action against the railroad in Illinois. Defendant made a motion pursuant to § 1404(a) to transfer the action to the Southern District of Iowa, where the accident occurred. The administratrix had moved to Illi-

nois nine months after the commencement of the action, and was a resident of Illinois at the time of the hearing of the motion for transfer. The District Court for the Northern District of Illinois denied defendant's motion and the defendant sought *mandamus*. The Court of Appeals for the Seventh Circuit ordered the case transferred to Iowa, and in so doing commented upon the weight to be given the plaintiff's choice of forum as follows:

> We agree with the statement of court in Josephson v. McGuire, D.C., 121 F.Supp. 83, 84: "A large measure of deference is due to the plaintiff's freedom to select his own forum. Yet this factor has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff * * *." In this case there is no controverted question which depends on any event occurring in the Northern District of Illinois. Both parties must rely upon evidence of events entirely removed from that District. B. Heller & Co. v. Perry, 7 Cir., 201 F.2d 525, 527.

■■ There are many cases which agree with the above statement that the plaintiff's choice of forum is given little weight when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy. See, e. g., Patterson v. Louisville & N. R. Co., 182 F.Supp. 95 (S.D. Ind.1960); Grubs v. Consolidated Freightways, Inc., 189 F.Supp. 404 (D. Mont.1960); Rodgers v. Northwest Air Lines, Inc., 202 F.Supp. 309 (S.D.N.Y. 1962); Polaroid Corp. v. Casselman, 213 F.Supp. 379 (S.D.N.Y.1962); Thompson v. Capitol Air Lines, Inc., 220 F. Supp. 140 (S.D.N.Y.1963). In conjunction with the plaintiff's initial choice of forum, the fact that the plaintiff may be required to hire additional attorneys in the transferee forum should not be given weight. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Patterson v. Louisville & N. R.

Co., supra. Also, the fact that the plaintiff's trial counsel might be inconvenienced by the transfer to another district is not to be considered. Henderson v. American Air Lines, Inc., 91 F.Supp. 191 (S.D.N.Y.1950); Cressman v. United Air Lines, Inc., 158 F.Supp. 404 (S.D. N.Y.1958); Standard v. Stoll Packing Corp., 210 F.Supp. 749 (M.D.Pa.1962).

In White v. Employers Liability Assur. Corp., 86 F.Supp. 910 (E.D.S.C. 1949), Judge C. C. Wyche of the Western District of South Carolina noted in his opinion that the scene of the events upon which the action is based could be important. It was also pointed out in Cinema Amusements, Inc. v. Lowe's, Inc., 85 F.Supp. 319 (D.Del.1949) that the fact that the controversy involves a particular locality and area, that the trial is to be by jury, and that a view of the premises may be necessary or appropriate, may be of considerable importance in determining the question of venue under section 1404(a). See also Koehring Co. v. Hyde Constr. Co., 324 F.2d 295 (5 Cir. 1964); Kasper v. Union Pac. R. Co., 97 F.Supp. 275 (E.D. Pa.1951); Tuck v. Pennsylvania R. Co., 122 F.Supp. 527 (E.D.Pa.1954); Ferment-Acid Corp. v. Miles Lab. Inc., 153 F.Supp. 19 (S.D.N.Y.1957); Cox v. Food Fair Stores, Inc., 163 F.Supp. 682 (E.D.Pa.1958).

■ This court finds that convenience and fairness direct that venue be transferred for the convenience of witnesses and parties and to do justice. On the issue of liability the proposed witnesses are all of Tennessee; all would find difficulty in coming to South Carolina, convenience in the transferee court. The injury occurred in Tennessee and all witnesses as to cause of death et cetera are in Tennessee. In a contested cause such as this the scene of the accident could well provide facts crucial to a jury's decision certainly far better than pictures or maps (although this court admits they may be helpful). The highway patrolman is usually a key fig-

ure in accident investigation.[8] The laws of Tennessee could best be dispensed by a jurist native to that State, the presiding judge of transferee forum. Tennessee law could best control such issues as interpleader of defendant's driver, the issue of respondeat superior. Witnesses as to damage to motor vehicles are of Tennessee. If the cause is tried in Tennessee no conflict of laws occurs, and the application and interpretation of Tennessee ordinances and/or statutes can best be there determined.

Fairness and justice direct that the cause be transferred to Tennessee's care. In reality, this is a Tennessee cause and there it can best be settled.

Motion granted.

And it is so ordered.

---

8. In South Carolina a patrolman cannot give an opinion—that is for the jury. He

is expected to give accurate measurements, positions, et cetera.