NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

v.

Larry W. LANDRY and Judy L. Landry, Defendants.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

v.

Mike J. LAVOI, Defendant.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

v.

Robert J. LAVOI and Deborah L. Lavoi, Defendants.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

v.

James R. BOURQUE and Marilyn C. Bourque, Defendants.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

v.

Sidney Anthony LAVOI, Jr. and Deborah D. Lavoi, Defendants.

Nos. 87 Civ. 4286 (LLS)–87 Civ. 4290 (LLS).

United States District Court, S.D. New York.

Dec. 18, 1987.

 

Brown & Wood, New York City, Roger J. Hawke, Scott T. Tross, of counsel, for plaintiff.

Richards O'Neil & Allegaert, New York City, Thomas I. Sheridan, III, Terri D. Austin, of counsel, Mangham, Hardy, Rolfs, Bailey and Abadie, Lafayette, La., Louis R. Davis, Dawn M. Fuqua, of counsel, for defendants.

STANTON, District Judge.

These are five cases, of over 350 currently before this Court, in which plaintiff National Union Fire Insurance Company of Pittsburgh ("National Union"), an issuer of financial guarantee bonds, is suing to enforce indemnity agreements between itself and nine limited partners in one of scores of tax shelter partnerships in various parts of the country, and also to enforce its rights as subrogee of promissory notes which it honored on their behalf. National Union had guaranteed, to those who advanced funds to the partnership enterprise, that the limited partners would make all of their capital contributions represented by their promissory notes to the partnership. When, for any of a variety of reasons, the limited partners stopped making their required contributions, National Union made them on their behalf. Now it sues the limited partners for reimbursement, under indemnity agreements they gave National Union at the time it guaranteed their payments, and as subrogee on the unpaid notes.

The defendant limited partners, here Larry W. Landry, Judy L. Landry, Mike J. Lavoi, Robert J. Lavoi, Deborah L. Lavoi, James R. Bourque, Marilyn C. Bourque, Sidney Anthony Lavoi, Jr. and Deborah D. Lavoi, move to consolidate the actions pursuant to Fed.R.Civ.P. 42 and to transfer them to the United States District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a). National Union cross-moves for summary judgment pursuant to Fed.R.Civ.P. 56 and to dismiss or stay defendants' counterclaims. Defendants' motion to transfer is granted. Their motion to consolidate is denied without prejudice. Plaintiff's motion for sum-

mary judgment is denied. Plaintiff's motion to dismiss or stay the counterclaims is denied without prejudice.

## FACTS

National Union is a Pennsylvania corporation with its principal place of business in New York City. The defendants are all Louisiana residents.

In or about August 1985, the defendants purchased limited partnership interests in Forest Vale Associates, L.P. ("Forest Vale") for $100,000 each. In connection with these purchases, each defendant gave Forest Vale a promissory note for $92,400 payable in semiannual installments until February 1, 1990. Each defendant also executed an indemnification and pledge agreement ("indemnity agreement") in favor of National Union.

Under the indemnity agreement, the limited partner (1) agreed to indemnify National Union against any liability, loss, or expenses, including attorneys' fees, resulting from payments made by National Union under the bond, (2) agreed to reimburse National Union for amounts paid by it, plus interest, in the event of a default by the limited partner, and (3) pledged his interest in Forest Vale as security for his obligations under the indemnity agreement.

The indemnity agreement included a choice-of-law clause and a permissive forum-selection clause:

> The Undersigned hereby agrees that the Application and this Indemnification and Pledge Agreement shall be deemed to have been executed in the State of New York, and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of New York. Any action or proceeding of any kind against the undersigned arising out of or by reason of this Indemnification and Pledge Agreement may be brought in any state or federal court of competent jurisdiction in any County in the State of New York, in addition to any other court in which such action might properly be brought.

Indemnity Agreements, ¶ 13.

On or about September 13, 1985, National Union issued Financial Guarantee Bond No. 117 75 31 (the "Bond") in favor of Forest Vale, as obligee, and Whitestone Savings, F.A. (the "Bank"), as permitted assignee of the defendants' promissory notes. The Bond obligates National Union to make payment under the notes in the event of a default. It further provides that National Union is subrogated to the rights of Forest Vale or the Bank against the defendants to the extent that it makes payment under the Bond. At or about the time National Union issued the Bond, Forest Vale assigned the notes to the Bank.

Each of the defendants failed to make his or her payment of $9,300 due August 1, 1986. National Union made payment under the Bond and brought suit to recover the payments. Those cases were dismissed without prejudice when the principal arrearages were repaid to National Union. The defendants then failed to make the payments of $9,800 each that were due on February 1, 1987. National Union made payment and brought suit on June 18, 1987 for breach of the indemnity agreements and as subrogee under the Bond to recover the payments it made in connection with the February 1, 1987 defaults. In this action, National Union also claims that the defendants owe interest and attorneys' fees in connection with the August 1, 1986 default.

On August 13, 1987 the defendants filed a complaint in the Western District of Louisiana, Lake Charles Division, against National Union, Forest Vale, Jaques–Miller Associates, individually and as general partner of Forest Vale, Jaques–Miller, Inc., individually and as general managing partner of Forest Vale, Mark E. Lumpkin, FSC Securities Corporation and LFP Advisory Corporation. They allege that Mr. Lumpkin acted as the agent of National Union and the other defendants in soliciting their investments in Forest Vale. They seek damages for breach of contract and violations of state and federal securities laws.

They claim that Mr. Lumpkin prepared all of the financial statements for them and asked that they sign the documents before

they were completely filled in. They state that they understood that the investment required them to sign promissory notes to guarantee payment of their limited partnership contributions. However, they claim that they did not know that they were signing surety bond applications and that they would not be able to invest in the partnership without doing so. They claim that Mr. Lumpkin induced them to sign the documents by promising to resell their partnership interests if they ever had difficulty making payments on the promissory notes, which he assured them he could do easily and without delay. They state that Mr. Lumpkin did not inform them that he did not have the approval of the General Partner to sell their partnership interests. Finally, they claim that they would not have signed the documents without Mr. Lumpkin's assurances that the partnership interests could be easily resold.

## DISCUSSION

1. National Union's Motion for Summary Judgment

█ National Union moves for summary judgment on the notes and the indemnity agreements, claiming that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985). The defendants contend that Mr. Lumpkin acted as National Union's agent, and that he fraudulently induced them to sign the notes and indemnity agreements that are the subject of National Union's claims by promising that he would resell their interests if they could not make payment on the notes. The defendants raise this issue in their answer and counterclaims, and support it with affidavits detailing the alleged misrepresentations made by Lumpkin, and stating that they would not have signed the documents without this promise. This presents material issues of fact which preclude summary

judgment. *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975).

National Union argues that the defendants have not raised a material issue of fact with regard to their claim as the Bank's subrogee on the notes, because the defense of fraudulent inducement is not available against a holder in due course. The notes are governed by Delaware law. Delaware has enacted the Uniform Commercial Code ("UCC"). Section 3–305 of the UCC provides:

> To the extent that a holder is a holder in due course he takes the instrument free from ... (2) all defenses of any party to the instrument with whom the holder has not dealt except ... (c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms ...

National Union claims that the defendants may not raise any "personal defenses" against it because it is subrogated to the rights of the Bank, which is a holder in due course of the notes. However, UCC § 3–201(1) provides:

> Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

Since the defendants allege that Lumpkin was acting as National Union's agent when he made the alleged misrepresentations, they allege that National Union was a party to the fraud; and on such a state of facts, assumed in their favor on this motion, National Union cannot cut off the defense by asserting its claims as the subrogee of a later holder in due course.

█ National Union also argues that the defendants have not raised any issue of material fact with regard to its claim under the indemnity agreement. It states "[e]ven assuming for purposes of this motion that

Lumpkin was National Union's agent, defendants' allegations that National Union fraudulently induced defendants into executing the Indemnity Agreement are flatly contradicted by the extensive disclosures in the Private Placement Prospectus" because the prospectus states that there might be "no market" for defendants' partnership interests, and that even if a market did exist, the Forest Vale general partners would have to approve any sale.

National Union cites *Gilchrist Machinery Co. v. Komatsu America Corp.*, 601 F.Supp. 1192, 1202 (S.D.Miss.1984) and *United States v. Willard E. Fraser Co.*, 308 F.Supp. 557, 563 (D.Mont.1970), *aff'd*, 459 F.2d 483 (9th Cir.1972), to support its claim that defendants' allegations of Lumpkin's oral misrepresentations are barred by the "parol evidence" rule. This argument fails for three reasons. First, under New York law and in this Circuit, parol evidence is admissible in support of a well-pleaded claim of fraud in the inducement of a contract. *Centronics Financial Corp. v. El Conquistador*, 573 F.2d 779, 782 (2d Cir. 1978). Second, the claimed misrepresentations concerned matters which are unrelated to the terms of the indemnity contract between National Union and the defendants. Finally, Mr. Lumpkin's alleged misrepresentations do not "flatly contradict" the cautions given by the private placement prospectus. Its warning that an investor who later wished to sell "will in all likelihood find no market" does not render impossible Mr. Lumpkin's alleged promise that he could sell the units; nor does its disclosure of the requirement that the general partners must consent to a sale necessarily contradict Mr. Lumpkin's ability, as their agent, to provide that consent.

Defendants have alleged sufficient facts in their affidavits to raise material triable issues as to whether Lumpkin was acting as National Union's agent and (as claimed by defendants) as "the agent for all of the companies which were on the documents" (Defendants' affidavits ¶ 24), whether Lumpkin made the alleged oral misrepresentations, and whether defendants were misled and relied on the alleged misrepresentations in signing the notes and indemnity agreements. Therefore, on the present record summary judgment is not appropriate.

## 2. The Defendants' Motion to Transfer

The permissive forum-selection clause in the indemnity agreement does not prevent a change of venue under § 1404(a). *See National Union Fire Insurance Co. of Pittsburgh, Pa. v. Beasley*, 86 Civ. 8801, slip op. at 6 (S.D.N.Y. April 1, 1987) [Available on WESTLAW, 1987 WL 9186]; *Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462, 1464–65 (S.D.N.Y.1983); *Coface v. Optique Du Monde, Ltd.*, 521 F.Supp. 500 (S.D.N.Y.1980). The indemnity agreement did not establish New York as the exclusive forum for litigation, but rather as a permissible forum, leaving the action subject to transfer depending upon the factors applicable to decisions under § 1404(a).

■ Section 1404(a) provides that a district court may transfer any civil action to any other district where the action might have been brought, "[f]or the convenience of parties and witnesses, [and] in the interest of justice." The threshold question is whether, as required by 1404(a), the action could have been brought in the transferee forum in the first place. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). The defendants are Louisiana residents. National Union sues for over $10,000. Thus, since citizenship is diverse, there is federal subject matter jurisdiction under 28 U.S.C. § 1332(a), and venue in the Western District of Louisiana, where the defendants reside, would be proper under 28 U.S.C. § 1391(a).

■ Defendants as movants bear the burden of establishing the propriety of a transfer. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). The pertinent factors to be considered in determining whether transfer is proper include: (1) the convenience of the parties, (2) the convenience of material witnesses, (3) the availability of process to compel the presence of unwilling

witnesses, (4) the cost of obtaining willing witnesses, (5) the relative ease of access to sources of proof, (6) where the events at issue took place, (7) the practical problems indicating where the case can be tried more expeditiously and inexpensively, and (8) the interests of justice in general. *Cain v. New York State Board of Elections*, 630 F.Supp. 221, 226 (E.D.N.Y.1986); *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y. 1967).

The defendants contend that a Louisiana forum would be more convenient because all the material events took place in Louisiana. Furthermore, Mr. Lumpkin, who can testify as to the meetings he had with the defendants concerning the execution of the partnership agreements and the related documents, is also a resident of Louisiana and is beyond the process of this court. The defendants are now prosecuting an action in the Western District of Louisiana that involves the same facts and issues raised in their answer and counterclaim in this action.

National Union argues that defendants waived the right to assert their own convenience by signing the indemnification agreement containing the venue selection clause. *Leasing Service Corp. v. Graham*, 646 F.Supp. 1410, 1413 (S.D.N.Y.1986). National Union also claims that some of the witnesses it may call are located in New York.

■ Ordinarily the plaintiff's choice of forum is entitled to considerable weight, and, absent a clear and convincing showing that the balance of convenience favors a transfer, plaintiff's choice should normally prevail. *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y.1983). However, that choice is given less weight where the case's operative facts have little or no connection with the transferor forum. *See Uddyback v. New Jersey Transit Rail Operations*, 629 F.Supp. 1173 (S.D.N.Y. 1986); *Mobile Video Services, Ltd. v. National Assn. of Broadcast Employees and Technicians, AFL–CIO*, 574 F.Supp. 668, 671 (S.D.N.Y.1983); *Troyer v. Karcagi*, 488 F.Supp. 1200, 1207 (S.D.N.Y.1980); *Essex Crane Rental Corp. v. Vic Kirsch Construction Co.*, 486 F.Supp. 529, 537 (S.D.N.Y.1980).

■ The significant facts in this suit indicate that a transfer to the Western District of Louisiana is warranted. The documents were executed in Louisiana. The alleged oral misrepresentations took place there. There is no question that the relevant documents can be produced in Louisiana. The principal actors, the defendants and Mr. Lumpkin, reside in Louisiana. The testimony of Mr. Lumpkin appears to be essential because he can testify to the representations he made to the defendants prior to the execution of the partnership documents. There is no indication that Mr. Lumpkin would voluntarily attend a trial in New York and he is beyond this court's subpoena power. With the transaction which took place in Louisiana of such critical importance, the live testimony of the material witness is desirable. *See, e.g., Teachers Ins. and Annuity Assn. of America v. Butler*, 592 F.Supp. 1097, 1106 (S.D.N.Y.1984); *Vaughn v. American Basketball Assn.*, 419 F.Supp. 1274, 1276–77 (S.D.N.Y.1976). The convenience of these essential witnesses tips the scale decisively toward Louisiana as the more appropriate forum for this suit.

National Union argues that venue should remain in New York because it will need one or more of its employees to testify concerning the issuance of the Bond, defendants' defaults, the Bank's demands and its own performance under the Bond. However, these facts are not in dispute in this case, so the need for live testimony of these witnesses is not pressing. *Cf. Teachers Ins. and Annuity Assn. of America v. Butler*, 592 F.Supp. 1097, 1106 (S.D.N.Y. 1984). Any inconvenience to these potential witnesses which may result from transferring this suit to Louisiana cannot outweigh the demonstrated inconvenience to the essential material witnesses if the suit is kept in New York.

Where a plaintiff's chosen forum has so little relation to the material facts of the case that he may not rely on the deference ordinarily given his choice, he cannot defeat a transfer motion which is supported

by a factual showing of greater convenience in the transferee forum merely by conclusory recitations of inconvenience. *See Anchor Savings Bank v. Transamerica Ins. Co.,* 634 F.Supp. 398, 400–01 (S.D.N.Y.1986); *Ross v. Colorado Outward Bound School, Inc.,* 603 F.Supp. 306, 310 n. 5 (W.D.N.Y.1985); *Mims v. Procter & Gamble Distributing Co.,* 257 F.Supp. 648, 656 (D.S.C.1966) (once defendant makes *prima facie* showing for transfer, burden shifts to plaintiff to justify denial).

Plaintiff should be prepared to litigate wherever it transacts its business. While National Union's main office is in New York, it does business in many states, including Louisiana. As a result, it "should expect that the use of a permissive forum selection clause may result in distant litigation where—as here—the opposing part[y] would be greatly inconvenienced by litigation in New York." *See, e.g., Leasing Service Corp. v. Rigdon,* No. 85 Civ. 1718, slip. op. at 7 (S.D.N.Y. January 15, 1987) [Available on WESTLAW, 1987 WL 4713]; *Leasing Service Corp. v. Patterson Enterprises, Ltd.,* 633 F.Supp. 282, 285 (S.D.N.Y. 1986).

In upholding dismissal on grounds of *forum non conveniens,* the Court of Appeals for the District of Columbia Circuit enunciated the principle that "courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; courts may legitimately encourage trial of controversies in the localities in which they arise." *Pain v. United Technologies Corp.,* 637 F.2d 775, 791 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981), citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 37 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The principle is sound, and is applicable here. The determinative factors in this case greatly favor transfer of this suit to Louisiana and the interests of judicial economy and justice will not be served by retaining this action in New York.

3. The Motions to Consolidate and to Stay or Dismiss Counterclaims

In view of the transfer to the Western District of Louisiana, it would be inappro-

priate for this court to decide the motion to consolidate or the motion to stay or dismiss counterclaims. Those motions are denied without prejudice to their renewal before the Louisiana court.

Accordingly, the Clerk of the Court is directed to transfer this action to the United States District Court for the Western District of Louisiana.

So ordered.