**Brenda Van Buren DICKEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. PJM 94–697.**

United States District Court,
D. Maryland.

Aug. 31, 1994.

Robert L. Weinberg, Hyattsville, MD, for plaintiff.

Stuart A. Berman, Asst. U.S. Atty., Baltimore, MD, for defendant.

## *OPINION*

MESSITTE, District Judge.

### I.

Plaintiff Brenda Van Buren Dicken has filed a personal injury action in this Court in which she seeks damages from the United States for injuries she allegedly sustained when she fell on a stairway while visiting an

inmate incarcerated at the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth"). The United States has moved, pursuant to 28 U.S.C. § 1404, to transfer the action to the District of Kansas, a request which Plaintiff opposes. For the following reasons, Defendant's Motion to Transfer will be granted.

### BACKGROUND

Plaintiff's action arises under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and §§ 2671–2680. Plaintiff, a resident of Suitland, Maryland, alleges that on or about June 13, 1993, at approximately 2:00 p.m., while visiting USP in Leavenworth, she "tripped and fell on a staircase, . . . thereby causing injury to herself." She contends that the "incident would not have occurred but for the fact that [the United States] negligently failed to properly maintain and inspect said stairway, by allowing said step to deteriorate, thereby creating a dangerous hazard, and/or by allowing the metal trip to become loose, thereby creating an additional dangerous hazard, and that [the United States] knew or reasonably should have known of the danger of maintaining the premises in this manner, but negligently failed to maintain said premises in the area where [she] tripped and fell." More specifically, Plaintiff submits that as a result of the government's negligence, she "caught her heel on the metal strip and fell down approximately five stairs, thereby causing injury to her body"—in the form of a fractured right ankle. She seeks $500,000 in damages.

Plaintiff correctly pleads this Court has subject matter jurisdiction under 28 U.S.C. § 1346(b). She also alleges that venue is proper in this district. But while the District of Maryland is indeed one of the judicial districts in which this case may be pursued, venue arises not under 28 U.S.C. § 1391(e), the statute invoked by plaintiff, but under 28 U.S.C. § 1402(b). That section provides that:

(a)ny civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

Even where venue is proper, however, an action may be transferred to another judicial district where venue is also proper, pursuant to 28 U.S.C. § 1404(a), which provides that:

(f)or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1404 was intended to enlarge the common law power of the court under the well-established doctrine of *forum non conveniens* and was enacted to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The burden is on the moving party to show that transfer to another forum is proper. *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 592 (E.D.Va.1992). The decision whether to transfer is committed to the sound discretion of the district court. *Southern Ry. Co. v. Madden,* 235 F.2d 198, 201 (4th Cir.), cert. den. 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956).

### II.

Against this background, the Court evaluates the factors traditionally employed in evaluating motions under § 1404. These were well summarized in Judge Thomas Selby Ellis III's exhaustive opinion in *Board v. Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F.Supp. 1253 (E.D.Va.1988) (hereinafter *Baylor Heating* ), and include: (1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties and (4) the interest of justice. The Court reviews each of these considerations in turn.

#### 1. *Plaintiff's Choice of Venue*

While a plaintiff's choice of forum is ordinarily accorded considerable weight, "the

plaintiff's choice of forum is given little weight when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Mims v. Proctor and Gamble Distributing Co.*, 257 F.Supp. 648, 657 (D.S.C.1966) (collecting earlier cases); *see also Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941, 945 and n. 5 (E.D.Va.1991). In this case, Plaintiff complains about allegedly unsafe conditions at a prison in Kansas; the accident giving rise to the cause of action occurred in Kansas; and virtually nothing other than plaintiff's convalescence took place in Maryland. Her choice of Maryland as a forum, therefore, is entitled to some deference, but it is limited, particularly to the extent that the remaining factors tend to support transfer.

### 2. *Witness Convenience and Access*

A second factor supporting transfer is access in the transferee-forum to crucial witnesses and the convenience of these witnesses. In this case, Plaintiff has identified no witnesses other than herself (to relate her version of her fall and to describe her alleged pain and suffering) and her treating doctor (presumably on the issues of pain, suffering and damages). Other unspecified witnesses are said to be available to testify to pain and suffering.

On the other hand, the United States has indicated that it intends to call as possible witnesses up to five individuals who observed the plaintiff's accident or who purportedly have knowledge regarding the facts of the incident and still work at USP Leavenworth: Charles W. Terrell, senior officer specialist; Mike Barnes, a safety specialist; Lewis R. Stowers, a physician's assistant; Dwight Fondren, the safety manager; and Daryl McQuirk, a recreation specialist. Two other potential Government witnesses work near Kansas: David Duncan, a former USP Leavenworth employee who now works at the federal prison medical facility in Springfield, Missouri; and B.J. Harmon, a former safety employee at USP Leavenworth who now works in Kansas City, Missouri. No other potential defense witnesses live in Maryland.

Not only would a greater number of witnesses be convenienced by a transfer to Kansas, *see Mims*, 257 F.Supp. at 655; as witnesses to the fall, their testimony is central to the claim and their credibility likely to be an important issue, *see Baylor Heating*, 702 F.Supp. at 1258.

The District of Kansas, the Court finds, would be more convenient for the great majority of witnesses in this case than the District of Maryland.

### 3. *Convenience of Parties*

The relative convenience of the parties is also a relevant transfer factor. As Judge Ellis observed in *Baylor Heating*, "this factor is chiefly operative in cases where the plaintiff chooses a forum away from (either party's) home." 702 F.Supp. at 1259. Since in the present case Plaintiff has filed in her home forum, transfer to Kansas would, in the words of Judge Ellis, "only shift the balance of inconvenience from defendant(s) to plaintiff." *Id.* at 1259–1260. On the other hand, in contrast to the convenience of the liability witnesses, Plaintiff would not appear to be substantially inconvenienced by a transfer. Quite obviously she was able to travel to the District of Kansas in the first place, viz., when the alleged injury occurred. Moreover, unless and until Plaintiff establishes otherwise, the only Maryland-based witnesses who might have to travel to Kansas are herself and her doctor—and the doctor's testimony could easily be presented at trial by means of a videotaped deposition taken in Maryland.

### 4. *Interest of Justice*

The broad category often referred to as "interest of justice" includes, among others, two factors favoring to transfer in the present case: "the court's familiarity with applicable law" and "access to premises that might have to be viewed." *Baylor Heating*, 702 F.Supp. at 1260.

### A. *Familiarity With Applicable Law*

██ Under the FTCA, negligence claims are governed by the tort law of the state where the alleged wrongful act or omission occurred. 28 U.S.C. § 1346(b). Consequently, the fact that the law of Kansas will

have to be applied is a factor to be considered in deciding a § 1404 motion. *Van Dusen,* 376 U.S. at 643, 84 S.Ct. at 823. While federal judges in Kansas are not necessarily better qualified than this Court to apply Kansas law, they are undoubtedly more familiar with it, a further consideration justifying transfer. *Cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (noting public interest in having diversity cases tried in forum familiar with governing law).

### B. *Access to Accident Site*

The core issue in this case will be the condition of a staircase—a fixed object that was, is, and will be located at USP Leavenworth and which cannot be readily transported to the District of Maryland. Quite possibly this case will be one that warrants a viewing of the accident site by the finder of fact. Although photos or videotape of the *locus in quo* might suffice, an inspection of the premises may, according to the presiding judge's lights, be desirable. Since cases under the FTCA are tried by the Court without a jury, 28 U.S.C. § 2402, it would be far easier for a judge in the District of Kansas to devote part of a trial day to a view of the premises at USP Leavenworth than it would be for a judge of this District to travel halfway across the country to view the same staircase.

### C. *Other Considerations in Interest of Justice Cited By Plaintiff*

■ Plaintiff correctly challenges Defendant's limited citation to the "interest of justice" considerations discussed in *Baylor Heating,* since Judge Ellis, in fact, suggests as does Plaintiff here, that docket conditions, the possibility of an unfair trial, and the possibility of harassment are all factors that might weigh in favor of or against transfer. *Id.* at 1260. But Plaintiff does nothing more than assert the "possibility" that she might suffer from these conditions if the present case goes to Kansas. This Court thus has no basis, beyond mere conjecture, to conclude that such conditions would obtain and, accordingly, they reduce not at all the overall calculus favoring transfer.

### 5. *Prior Accident Cases Granting Transfers*

All factors considered, the Court concludes that transfer from the District of Maryland to the District of Kansas is warranted. Summing up, this case closely parallels prior cases in which transfer has been ordered. One prominent example, invoked in *Mims,* is *Southern R.R. Co. v. Madden,* 235 F.2d 198 (4th Cir.), *cert. denied,* 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956), where a tort claim arising from an accident in North Carolina was filed and originally tried in South Carolina. The Fourth Circuit held that the district court's refusal to transfer the case to North Carolina under § 1404 was an abuse of discretion:

> On the question of transfer, it appeared not only that the plaintiff's injury occurred in Charlotte, North Carolina, and that the question of liability was governed by North Carolina law, but also that all of the witnesses to the occurrence and to the treatment of plaintiff in a Charlotte hospital following his injury lived in Charlotte, except one who had moved to West Virginia, and that a view of the locus in quo by the jury, which would be of importance in the trial of the case, could reasonably be had only if the case were tried in Charlotte.... The question of transfer under 28 U.S.C. § 1404(a) was, of course, a matter resting in the sound discretion of the District Judge, but we cannot imagine a case more clearly calling for the exercise of the power of transfer conferred by the statute; and not to transfer it was, we think not a sound exercise of discretion.

235 F.2d at 200–01. *Accord, Leppard v. Jordan's Truck Line,* 110 F.Supp. 811 (E.D.S.C.1953) (transferring from South Carolina to North Carolina personal injury case arising from accident in North Carolina). Following this precedent, the *Mims* court transferred from South Carolina to Tennessee a wrongful death action brought on behalf of South Carolina residents who were killed in an automobile accident that occurred in Tennessee. Later, in *Akers v. Norfolk and Western Railway Co.,* 378 F.2d 78 (4th Cir.1967), the Fourth Circuit granted a writ

of mandamus ordering the transfer to West Virginia of an action filed in Virginia by a railroad employee who was injured in West Virginia, where the significant witnesses resided. A more recent § 1404 case, *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941 (E.D.Va.1991), catalogues several other cases which were transferred from plaintiff's home state to a district in a state where the accident occurred, where most witnesses lived, and whose substantive law controlled. *Id.* at 945 (collecting cases).[1]

In the case at bar, the accident occurred in Kansas on a site which can only be viewed in Kansas, Plaintiff's initial medical treatment took place in Kansas, most potential witnesses are located in or near Kansas, and Kansas law governs Plaintiff's claims and the Government's defenses. Under these circumstances, the United States has satisfied its burden of showing that transfer from the Plaintiff's chosen forum to a more convenient forum is appropriate.

### CONCLUSION

For all of these reasons, pursuant to 28 U.S.C. § 1404(a), this Court has determined to transfer this action to the United States District Court for the District of Kansas.

---

1. *See, e.g., Karrels v. Adolph Coors Co.,* 699 F.Supp. 172, 177 (N.D.Ill.1988) granting a transfer motion in a case arising out of a swimming pool accident:

> ... [E]very event of interest to this case happened in Indiana. The plaintiff's accident occurred in Indiana, the events surrounding the accident took place in Indiana, and the plaintiff received emergency medical treatment at a hospital in Indianapolis. Only [plaintiff]'s resident in Illinois and rehabilitation treatment in Illinois provide any contact with Illinois. This case poses the following issues of local law: premises liability; negligence of the plaintiff; apportionment of liability among defendants; and, indemnity. While these issues may not be complex, we believe that the district court for the Southern District of Indiana will be more readily familiar with the applicable law.
>
> Second, the swimming pool is located in Indiana and the Indiana court will have greater access to this most important source of proof. Indeed, a transfer of a case to the district which encompasses the situs of the accident has been recognized in many cases....

*Id.* at 177 (citation omitted).